
FILED
AUG 29 2017
Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MICHAEL ELLENBURG,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD,<br><br>Respondent. | Cause No. CV 17-34-H-DLC-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

On March 8, 2017, Petitioner Michael Ellenburg filed documents with this Court that seemed to seek habeas corpus relief under 28 U.S.C. § 2254.[1] Ellenburg was ordered to clarify his intent in filing the documents. (Doc. 3). Ellenburg timely responded. (Docs. 4, 5, 10, and 10-2). The State was then ordered to file an affidavit addressing the purported violations raised by Ellenburg. (Doc. 14). The State timely responded. (Doc. 17). Although unsolicited, Ellenburg then filed his own affidavit and supporting documents. (Docs. 15, 15-1, 15-2, 15-3 and 18). Based upon a review of the information provided, it is recommended that Ellenburg's petition be denied for lack of merit.

---

[1] The procedural and filing history of Mr. Ellenburg has been set forth in other matters. See, e.g. *Ellenburg v. MacDonald*, Nos. CV 07-139-M and CV-08-114-M (D. Mont. Aug. 7, 2008), Order (07-139-M Doc. 18; 08-114-M Doc. 11)(2007 and 2008 habeas petitions were consolidated and denied for lack of merit); *Ellenburg v. Kirkegard*, No. CV-14-80-H (D. Mont. November 11, 2015)(some claims denied for lack of merit and others dismissed for lack of jurisdiction); see also (Doc. 14 at 2-5).

i.  **Ellenburg's Claims**

It appears Ellenburg primarily takes issue with an "illogical" release condition being imposed upon him that requires him to establish a long-term permanent residence. (Doc. 4-1 at 1). Ellenburg contends his right to be free from ex post facto has been violated because he is being held past his parole date and his punishment has purportedly increased. He asserts this condition has resulted in a miscarriage of justice and a lack of fair process. (Doc. 4 at 1-2). Ellenburg argues this condition retroactively imposes a more restrictive parole standard, *id.* at 3, and that due to his indigence he cannot meet the inequitable term. *Id.* at 1-2. Finally, Ellenburg argues an equal protection violation has occurred because similarly situated individuals are not subject to the same impossible terms and conditions of parole to which he has been subjected. *Id.* at 2; see also (Docs. 10 and 10-1).

ii.  **State's Response**

The State responded by filing an Affidavit from Mr. James Jess who is currently employed as an Institutional Probation and Parole Office at the Montana State Prison; Mr. Jess is familiar with Ellenburg. See generally, (Doc. 17). The State confirms Ellenburg was conditionally granted parole on January 28, 2016, and that his status has not changed- he is eligible for parole upon submission of an acceptable parole plan. (Doc. 17 at 3, ¶5).

In his initial parole plan, Ellenburg indicated his intent to reside in Missoula.

Additionally, he indicated that a woman named Donna Hendricks was holding money in trust for him. *Id.* at 3-4, ¶8. Upon making contact with Ms. Hendircks, it was revealed that there was no trust, that she was simply keeping some jewelry for Ellenburg, and that he was not welcome to stay at her residence. *Id.* at 4, ¶¶9-10. Ellenburg refused to discuss the matter with Mr. Jess. *Id.* at ¶10. Due to this discrepancy and the concern that Ellenburg would not have adequate resources to support himself, that parole plan was not approved by the Board. Mr. Jess and Ellenburg's case manager have apparently attempted to work with Ellenburg to develop other parole plan options, however, none of the proposals have been acceptable to Ellenburg. *Id.* at 5, ¶11.

Mr. Jess indicates that the only subsequent parole plan submitted by Ellenburg proposed that he be allowed to parole to a homeless shelter in Seattle, Washington. *Id.* at 5, ¶13. The plan was not accepted because Washington State will not accept supervision under an Interstate Compact Agreement unless an individual has a place to live. *Id.* A homeless shelter does not qualify. Because Ellenburg insisted on the Board considering this plan, a rescission hearing was held due to the fact that Ellenburg's second plan presented a substantial change from his original release plan. *Id.* at ¶14. At the October 26, 2016, rescission hearing, the Board took no action. Mr. Jess explains that Ellenburg is still parole eligible upon submission of an acceptable parole plan. *Id.* at 5-6, ¶14.

Mr. Jess also explains Ellenburg's claim that he is being required to establish "a long-term permanent residence" prior to his release is inaccurate. All that is required is that an individual have a physical place to live. *Id.* at 9, ¶23. For example, a transitional living facility or half-way house would be considered suitable housing. Apparently, Ellenburg has refused to consider placement at any such facility and also refused to meet with both Michael McClary and Phil Keating, who manage transitional living homes in Helena, Bozeman, and Butte. *Id.* at 5, ¶12. Ellenburg also refuses to consider placement at similar facilities in Billings and Missoula. *Id.* While all offenders must have a place to reside prior to their parole, acceptable living arrangements include: an apartment, a hotel room for a month, a group home, a transitional living center, or with a friend or relative. *Id.* at 9, ¶22. This requirement is imposed upon all offenders, and has been a condition precedent to parole for decades. *Id.* at ¶23. Thus, the State asserts Ellenburg is not being treated in a disparate manner. *Id.*

Finally, Mr. Jess has outlined different attempts that have been made to assist Ellenburg's transition to parole. These acts include attempting to help Ellenburg apply for Social Security Disability Income (doc. 17 at 7, ¶16) and providing Ellenburg contact information for subsidized housing available in Missoula. *Id.* at ¶17. Apparently Ellenburg has rejected the offered assistance. With the submission of a viable parole plan, additional resources, including up to

$500 for a parolee's first month of rent, up to a 30-day supply of prescription medication, and additional transitional assistance funds, are available.

Offenders may apply for a 10-day furlough, which may be extended for up to 20 days, to allow an individual to secure housing and/or employment. *Id.* at ¶18. The Board would also consider a request for a short-term stay at a pre-release center in order to enable an individual to locate a residence. *Id.* In sum, Mr. Jess opines:

> Ellenburg could have been released on parole more than a year ago, if he was willing to accept the options available to him as an offender coming out of prison. He has been told that if he continues to reject every option that we put in front of him, continues to make requests that are not realistic, and continues to make demands that cannot be met he will not have any options left and will eventually be discharged from MSP without having secured housing.

*Id.* at 8, ¶19.

Although Ellenburg objects to the condition of heightened supervision under the Department of Corrections' Intensive Supervision Program, the Board has determined that the condition is appropriate given Ellenburg's prior criminal record and history under supervision. *Id.* at ¶¶20-12. Mr. Jess unequivocally states that no impossible conditions have been imposed upon Ellenburg; he is similarly situated to hundreds of other prisoners that are paroled each year in Montana. *Id.* at 9, ¶24.

### iii. Analysis

Although some or all of Ellenburg's claims may be procedurally barred and/or unexhausted, it is clear that he is not entitled to relief on the merits of his claims. Accordingly, it is more efficient to proceed to the merits. 28 U.S.C. §2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Gutierrez v. Griggs*, 695 F. 2d 1195, 1198 (9th Cir. 1983).

### a. Due Process

Federal habeas review of state parole decisions is limited. *Swarthout v. Cooke,* 131 S.Ct. 859, 862 (2011) (per curiam). In *Cooke,* the Supreme Court held that the Due Process Clause requires only that a prisoner be provided an opportunity to be heard and a statement of the reasons for the denial of parole. *Cooke,* 131 S.Ct. at 862 (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 12 (1979)). It is "of no federal concern ... whether California's 'some evidence' rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied." *Cooke,* 131 S.Ct. at 863. Therefore, where an inmate has received an opportunity to be heard and a statement of reasons for the parole denial, that is "the beginning and the end of the federal habeas courts' inquiry into whether [petitioner] received due process." *Cooke,* 131 S.Ct. at 862.

Ellenburg was informed of the reasons why his initial parole plan was deemed unacceptable- he had provided incorrect information about the existence of a trust. When it was discovered that there was, in fact, no trust, the ability of Ellenburg to afford housing was questioned and Ellenburg was advised he would need to develop a different plan. (Doc. 17 at 4-5). Ellenburg has been unwilling to consider other options, including a transitional living facility or half-way house. The only subsequent plan Ellenburg submitted, involved paroling to a homeless shelter in Seattle. This, likewise, was not a viable option. *Id.* at 5. Ellenburg remains eligible for parole consideration upon submission of an acceptable plan.

It does not appear that the Board of Pardons or any individuals within the Montana Department of Corrections have done anything to impede Ellenburg's opportunity for parole. Ellenburg has had the requisite hearings and been notified of the reasoning for the denial. Moreover, it appears that several individuals, including Mr. Jess, have offered repeated assistance to Ellenburg, which has been refused. In short, it appears Ellenburg has been afforded the process he is due and no constitutional violation has occurred.

### b. Ex Post Facto

The inquiry into a purported ex post facto violation is two-pronged. "[F]irst, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it."

7

*Hamilton v. United States*, 67 F. 3d 761, 764 (9th Cir. 1995)(quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987). In terms of disadvantage, the Supreme Court has held that the Ex Post Facto Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't of Correction v. Morales*, 514 U.S. 499, 504 (1995)(quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)).

Ellenburg argues that an ex post facto violation occurred when the Board of Pardons and Parole imposed the condition upon Ellenburg that he first establish "long-term permanent residence." Ellenburg argues that the condition is outside of his financial resources, and as a result, his punishment has been increased and his imprisonment unlawfully extended. As previously stated, Ellenburg mischaracterizes this requirement- a halfway house or hotel room could suffice. But, Ellenburg's ex post fact argument fails for other reasons. First, the requirement that Ellenburg obtain a place to live is not a law, it is a condition imposed upon all parolees. Moreover, it "does not impose punishment." *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997). There is not punitive purpose in this requirement. Although the Board declined to approve the plan Ellenburg initially submitted, he has not demonstrated that the residence requirement amounts to additional punishment or penalty.

Under Montana law, as well as federal law, parole is a privilege and not a right. "Since parole is granted as a matter of grace, rather than right, the state may offer such grace under and subject to such conditions as it considers most conducive to accomplish the desired purpose." *McDermott v. McDonald*, 2001 MT 89, ¶19, 305 Mont. 166, 24 P. 3d 200. The housing requirement placed upon Ellenburg, and upon all potential parolees, is a reasonable one. The denial of Ellenburg's preferred parole plan, does not create an ex post facto problem.

### c. Equal Protection

Ellenburg also alleges that his equal protection rights were violated when he was subjected to impossible parole conditions which other similarly situated individuals were not forced to follow. Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). Ellenburg also alleges that by virtue of his disability, he is being treated in a disparate manner and that either the Parole Board of members of the Montana Department of Corrections have violated his rights under the Americans with Disabilities Act.

Title II of the ADA, 42 U.S.C. §12101 et seq., provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.

§12131; *Tennessee v. Lane*, 541 U.S. 509, 532 (2004)(quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). The Ninth Circuit has suggested that a prisoner's ADA claim can sound in habeas corpus if it "raises the specter of a challenge to the validity or duration of confinement." *Bogvich v. Sandoval*, 189 F. 3d 999, 1002 (9th Cir. 1999).

But this claim is plainly defeated by the affidavit of Mr. Jess. Mr. Jess explained not only was Ellenburg misunderstanding or misrepresenting that he was required to have "long-term permanent residence" prior to his release on parole, all offenders must have identified a place to live prior to their release. Jess pointed out that it does not need to be a permanent residence, a room in a transitional living home or hotel would suffice. Moreover, this is a condition that is required of all offenders. Ellenburg is not being treated in a disparate manner or being made to complete impossible tasks. The fact that Ellenburg refuses to cooperate with Mr. Jess and other individuals at the prison to devise a suitable release plan, does not turn this matter into one of constitutional import.

Mr. Ellenburg has not established an equal protection violation. Likewise, Ellenburg has failed to make a showing that he is being discriminated against in any manner, much less because of his disability. He has not established this purported discrimination is a basis to question the validity or duration of his

confinement. There is no discriminatory intent present that would provide a basis for habeas relief.

### d. Violations of Montana State Law or Policy

Generally, Ellenburg seems to argue that either the Board of Pardons or members of the Montana Department of Corrections have violated state law and state policy by imposing certain conditions upon him, including the housing condition and the requirement that Ellenburg be placed under the Montana DOC's Intensive Supervision Program. For example, Ellenburg appears to believe state actors have violated Mont. Code Ann. §46-23-1022, by their purported failure to provide adequate parole services. But, such an argument is unavailing.

Federal habeas relief cannot be granted on the ground that a conviction or sentence violates the state constitution or state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)("Federal habeas corpus relief does not lie for errors of state law."); see also, *Peltier v. Wright*, 15 F. 3d 860, 861-62 (9th Cir. 1994). To the extent that Ellenburg attempts to advance arguments relative to violations of state law, such claims are not cognizable in federal habeas.

### iv.    Conclusion

Mr. Ellenburg's petition should be denied in full. The claims he advances are either frivolous, lacking in merit, or are not cognizable in habeas.

11

v.    **Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Ellenburg has not made a substantial showing that he was deprived of a constitutional right. There are no close questions and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court issues the following:

### RECOMMENDATION

1. The Petition (Doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION

## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Ellenburg may object to this Findings and Recommendation within 14 days.[2] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Ellenburg must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u>  Failure to do so may result in dismissal of his case without notice to him.

DATED this 29th day of August, 2017.

*/s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[2] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Ellenburg is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire